# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTHONY O.,** | Civil Action No. 20-3856 (MCA) |
| **Petitioner,** | |
| v. | **MEMORANDUM OPINION** |
| **H.O. THOMAS DECKER, et al.,** | |
| **Respondents.** | |

Petitioner Anthony O. ("Petitioner" or " Anthony O.") is a native and citizen of Guatemala, who is currently in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and detained at Bergen County Jail ("Bergen County Jail" or the "Facility") in New Jersey. On April 3, 2020, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. The matter was originally filed in the United States District Court for the Southern District of New York and was transferred to this District on April 8, 2020, and assigned to the undersigned on April 9, 2020. Petitioner asserts that he is entitled to a bond hearing pursuant to 8 U.S.C. §1226(a) and seeks immediate release from detention based on his medical condition that renders him vulnerable to severe illness or death if he were to contract the novel coronavirus disease 2019 ("COVID-19"). *See* ECF No. 1. Respondents oppose the Motion. *See* ECF No. 9. Having reviewed the parties' submissions, examined the applicable law, and directed the parties to provide supplemental information, the Court now grants the Petition insofar as it seeks a Preliminary Injunction requiring Petitioner's release, and orders Respondents to immediately release Petitioner subject to conditions set forth in the accompanying Order.

1

## I. FACTUAL BACKGROUND

### A. The COVID-19 Health Crisis

On March 11, 2020, the World Health Organization classified COVID-19 as a global pandemic, anticipating that "the number of cases, the number of deaths, and the number of affected countries" would increase.[1] Around that time, the United States had reported only approximately 1,000 cases of COVID-19.[2] As of May 16, 2020, that number has risen to 1.4 million and the virus has taken 87,436 lives nationally.[3] New York and New Jersey have the greatest number of infections and deaths in the nation, with New Jersey reporting a total of 143,905 cases and 10,138 deaths as of May 16, 2020.[4] Bergen County, where Petitioner is detained, has the most cases of the virus in New Jersey, with a total of 17,195 cases and 1,443 deaths as of May 16, 2020.[5]

According to the Centers for Disease Control and Prevention (the "CDC"), COVID-19 spreads "mainly from person-to-person" between those "who are in close contact with one another (within about 6 feet)" and from contact with contaminated surfaces.[6] The most common symptoms of COVID-19 include fever, cough, and shortness of breath, but, notably, one need not present any symptoms to have the virus or be contagious.[7]

---

[1] World Health Org., *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 – March 2020* (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[2] *Coronavirus Case Total Climbs in New York*, THE NEW YORK TIMES, https://www.nytimes.com/2020/03/11/nyregion/coronavirus-new-york-update.html, (last visited May 16, 2020).

[3] *Coronavirus in the U.S.: Latest Map and Case Count,* THE NEW YORK TIMES, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html, (last visited May 16, 2020).

[4] *New Jersey Coronavirus Map and Case Count*, THE NEW YORK TIMES, https://www.nytimes.com/interactive/2020/us/new-jersey-coronavirus-cases.html, (last visited May 16, 2020).

[5] *Id.*, https://www.nytimes.com/interactive/2020/us/new-jersey-coronavirus-cases.html#county (last visited May 16, 2020.

[6] Ctrs. for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited May 16, 2020).

[7] *Id.*; Ctrs. for Disease Control and Prevention, *Symptoms of Coronavirus*, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 16, 2020).

2

Experts still have much to learn about how the virus spreads. In early April, the CDC director, Dr. Robert Redfield, in an interview with National Public Radio affiliate WABE, stated that "a significant number of individuals that are infected actually remain asymptomatic. That may be as many as 25 percent[,]" and this is important because asymptomatic individuals contribute to the transmission of the virus.[8] Furthermore, those who become symptomatic can likely transmit the virus up to 48 hours before they show symptoms.[9] These asymptomatic transmitters and individuals who are transmitting the virus before they become symptomatic help explain how rapidly the virus can spread.[10] Ultimately, "[t]he best way to prevent illness is to avoid being exposed to this virus."[11]

But in truth, avoiding exposure to COVID-19 is impossible for most detainees and inmates in correctional facilities, and detainees who meet the CDC's criteria for "higher risk" are the most vulnerable to a detention facility's shortcomings. In its guidance for correctional facilities, the CDC has explained that, among other things, the crowded and fluid nature of detention facilities, the inadequate hygienic supplies, and the limited options for medical isolation present "unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *See* ECF No. 26-2, CDC March 2020 Interim Guidance ("CDC Interim Guidance") at 2. Consequently, practicing social distancing and ensuring proper hygiene to minimize the risk of infection are exceedingly difficult.

---

[8] *CDC Director On Models For The Months To Come: 'This Virus Is Going To Be With Us'*, NPR, https://www.npr.org/sections/health-shots/2020/03/31/824155179/cdc-director-on-models-for-the-months-to-come-this-virus-is-going-to-be-with-us.

[9] *Id.*

[10] *Id.* The CDC also states in its guidance that "[s]ome recent studies have suggested that COVID-19 may be spread by people who are not showing symptoms." Ctrs. for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited May 6, 2020).

[11] *Id.*

### B. Petitioner's Medical Condition and Requests for Release or Bond

Petitioner was taken into custody by ICE on or about February 12, 2020, and is detained at the Bergen County Jail; he was served with a Notice to Appear ("NTA") charging him with removability on the basis that is present in the United States without admission or parole in violation of Section 212(a)(6) of the Immigration and Nationality Act ("INA"). *See* Petition, Ex. B, NTA.

It is undisputed that Petitioner has human immunodeficiency virus ("HIV"), *see* Petition ¶ 2 & Ex. A; ECF No. 21 Medical Records at 2; ECF No. 9, Answer at 6, and is prescribed the HIV treatment Biktarvy. *See* Medical Records at 2. The Center for Disease Control and Prevention's ("CDC") warns people who are immunocompromised, including those with HIV, that they may be at higher risk for severe illness if they contract COVID-19,[12] and Respondents acknowledge that ICE has approved release for certain detainees based on their individual circumstances in light of the COVID-19 pandemic. *See* Answer, Ex. C, ICE Updated Guidance Re: COVID-19 dated April 4, 2020 (directing field office directors and assistant field office directors to review detainees to re-assess custody for those who are pregnant or recently delivered, over age 60 or have chronic illnesses which would make them immune-compromised). With respect to Petitioner, Respondents state that "[ICE] has considered Petitioner's allegation that he has HIV, but has declined to authorize his immediate release because Petitioner has two convictions for drug offenses and an outstanding bench warrant." *See* Answer at 7.

---

[12] Ctrs. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last visited May 6, 2020); *see also id.*, *What to Know About HIV and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/hiv.html (last visited May 16, 2020).

Petitioner's first master hearing occurred on February 25, 2020, but the immigration court adjourned it for attorney preparation and pleadings. Answer at 13. His next master hearing took place on March 13, 2020, and the immigration judge sustained the charge of removability. *Id.* The immigration court set his next hearing date for March 27, 2020. *Id.* Petitioner's counsel submitted a request for a bond hearing on March 20, 2020. *See* Petition ¶ 8; *see also id.*, Ex. E. On that date, the immigration court planned to hold both a bond hearing (where Petitioner would attempt to obtain bond if he met his burden of demonstrating he was not a danger to the community or a risk of flight) and a master hearing, and Petitioner appeared with counsel for the hearing. *See* Petition ¶¶ 9-10. However, both hearings were adjourned to a date to be determined due to the COVID-19 pandemic. *See id.* ¶ 10; Answer at 13-14. Petitioner's counsel repeatedly called the New York City Varick Street Immigration Court to obtain information about a rescheduled bond hearing date for Petitioner, but was unable to obtain that information for several weeks. *See* Petition ¶ 11. On May 4, 2020, Petitioner's counsel wrote to inform the Court that Petitioner received a bond hearing at the Varick Street Immigration Court on May 1, 2020, and was denied bond based on his failure to prove that he is not a flight risk. *See* ECF No. 16, 16-1, Immigration Judge ("IJ") Bond Order dated May 1, 2020 ("Bond Order").

In the Petition, Petitioner asserts that he is entitled to a bond hearing and that his underlying medical condition coupled with the conditions at Bergen County Jail during the COVID-19 pandemic place his life in danger in violation of his Fifth Amendment due process rights.[13]  *See* Petition ¶¶ 2, 12.

---

[13] On May 11, 2020, the Court dismissed Petitioner's procedural due process claim premised on his right to a bond hearing and directed Petitioner to provide additional information about his substantive due process claim that his detention amounts to punishment. *See* ECF No. 18.

### C. COVID-19 Response at the Bergen County Jail

The measures to address COVID-19 at the Bergen County Jail are described in detail in the May 11, 2020 Declaration of Warden Ahrendt ("Ahrendt Decl."), s*ee* ECF No. 20-1, and include procedures for mitigating the risk of COVID-19 exposure from both external and internal sources.

To mitigate the risk of exposure from external sources, the Facility has suspended all ICE detainee intakes effective March 12, 2020, and is screening new county inmates, staff members, and vendors for the coronavirus. Ahrendt Decl. ¶¶ 9.A., 9.B., 9.D. The Facility has also suspended all social visitations and tours, and only "no-contact" visits and telephone conferences are permitted with attorneys. *Id.*¶ 9.C.

To mitigate the risk of exposure from internal sources, all detainees must remain in their cells at all times, "except for a thirty-minute period each day when they are permitted to exit the cell area." *Id.* ¶ 9.F. To promote social distancing during that thirty-minute period, "only six inmates/detainees are permitted to leave the cell area" where they have "2643 square feet of space" for recreational use and showering. *Id.* Detainees and inmates have meals inside their cells to avoid congregating. *Id.* ¶ 9.L. With respect to cleaning and hygiene, "[a]ll housing units are sanitized no less than four times per day." *Id.* Respondents also state that "[t]he Facility provides disinfectant spray, hand sanitizer, and soap in every housing unit," *Id.* According to the protocol, these cleaning supplies are available for detainees to clean the bathroom, shower, and telephones prior to use and detainees are encouraged to use these supplies. *Id.* In addition, "[i]nmates and detainees have been issued surgical masks, and all inmates and detainees wear their issued masks any time that they are out of their cells."[14] *Id.* ¶ 9.N. Similarly, staff at the facility have been

---

[14] According to the Warden, all staff members have also been issued surgical masks to wear inside the facility. *See* Ahrendt Decl. ¶ 9.E. The protocol for detainees is somewhat unclear, as the Ahrendt Declaration first states that

6

provided with masks and are instructed to wear them in the Facility, and gloves are also available when necessary. *Id.* ¶ 9.E. According to Warden Ahrendt, the Facility has not experienced any shortages of cleaning supplies or personal protective equipment ("PPE"). *Id.* ¶ 9.L.

The Facility also has isolation and quarantine protocols for confirmed and suspected cases of COVID-19. Confirmed cases that do not require hospitalization are isolated in a designated area. *Id.* ¶ 9.H. Symptomatic inmates or detainees who are awaiting test results are quarantined. *Id.* Finally, those who are asymptomatic but "have had a known exposure" to a confirmed COVID-19 case are "cohorted" together with restrictive movement for fourteen-day period. *Id.* ¶ 9.J. Cohorting ends if no new COVID-19 case develops within that period. *Id.*

The Facility has an on-site physician who is on-call 24/7 for emergencies and has added additional medical staff. *Id.* ¶ 7. Detainees and inmates are permitted to make daily sick calls to on-site medical staff. *Id.* ¶ 9.H. If detainees or inmates complain of illness, medical staff evaluates them. *Id.* Those who present with COVID-19 symptoms are provided a "surgical mask." *See id.* Detainees and inmates may be transported to a hospital for evaluation at the direction of the medical director. *See id.* Warden Ahrendt does not state whether high-risk detainees like Petitioner are subject to those same procedures, or whether the Facility makes other accommodations based on their needs.

Warden Ahrendt's May 11, 2020 Declaration states that 11 corrections officers and two nurses have tested positive for COVID-19. *See id.* at ¶ P.4. According to Sheriff Anthony Cureton of the Bergen County Sheriff's Office, as of April 21, 2020, <u>24 corrections officers</u>, 6 sheriffs, and <u>4 nurses</u> have tested positive for COVID-19.[15] (emphasis added). According to the ICE website,

---

only symptomatic detainees are provided with surgical masks but later states that all detainees have been provided with a surgical mask to be worn outside his or her cell. *See id.* ¶¶ 9.H, 9.N.

[15] Insider New Jersey, *Bergen County Jail Update: 24 Corrections Officers, 6 Sheriff's Officers Currently Positive for COVID-19*, https://www.insidernj.com/bergen-county-jail-update-24-corrections-officers-6-sheriffs-officers

7

there are two confirmed cases of COVID-19 among ICE detainees.[16] According to Warden Ahrendt's May 11, 2020 Declaration, there are no suspected positive cases of COVID-19 among detainees and 3 suspected cases among inmates as of that date. *Id.* ¶ P.2.

### D. Petitioner's Experiences at Bergen County Jail

Petitioner's recent experiences at Bergen County Jail, although not entirely inconsistent with Warden Ahrendt's sworn declaration, highlight gaps in the Facility's protocols. Through a statement submitted by his counsel, Petitioner reports that "[t]here is no soap in my cell or other cleaning products. The bathrooms and showers often have no soap now, so there is nothing to clean our hands or body with." ECF No. 19, Camilo Decl. ¶ 7. Petitioner also reports that "[t]here is no toilet paper at the jail now. We have taken to using the harsh brown paper towels meant for cleaning in the kitchen. We rip up the paper towels to use as toilet paper." *Id*. ¶ 8. Petitioner further states that "[w]e have no other equipment or products to clean our beds, cells, or ourselves." *Id.* ¶ 9. In addition, Petitioner's bedsheets are cleaned on the same pre-COVID-19 schedule. *Id.* ¶ 10.

Petitioner states that the use of PPE by detainees and staff is inconsistent as "[w]e are not required to use masks in all parts of the jail, so people often don't wear them." *Id.* ¶ 12. Petitioner has "not been given gloves, and he is not aware of any detainees that have been given gloves. *Id.* ¶ 11. Likewise, Petitioner states that "[t]he Commanding Officer (CO) will sometimes wear a mask, but normally not" and he has "never seen a CO with gloves on." *Id.* ¶ 13.

---

currently-positive-covid-19/ (last visited May 4, 2020); *see also* ECF No. 9-5, Ahrendt Decl. (Apr. 14, 2020) at ¶ 9.O (reporting 18 corrections officers and 4 nurses testing positive as of April 14, 2020). The reason for this discrepancy is unclear.

[16] U.S. Immigration and Customs Enforcement, *ICE Guidance on COVID-19*, https://www.ice.gov/coronavirus (last visited May 6, 2020).

Petitioner further asserts that social distancing is not possible in Bergen County Jail and that he and other detainees "cannot social distance in the bathrooms, or in the cells, or anywhere else." *Id.* ¶ 14.  He further asserts that "[t]he inmates who bring our food do not wear gloves or masks" and the detainees "still eat in the same way that [they] ate before [and] sleep in the same manner that [they] slept before." *Id.* ¶ 15.

Petitioner states that his "cell block had several inmates who tested positive for COVID-19" in March. *Id.* ¶ 17.  At that time, prison officials "separated [the detainees] into groups to try and quarantine [them]. *Id.*  Petitioner is not aware of anyone on his cell block who has been tested for COVID -19 after late March. *Id.* ¶ 18.

Petitioner has been "especially scared because [he] had pneumonia two years ago, and [his] lungs never fully recovered." *Id.* ¶ 19.  When it is cold, Petitioner's "lungs hurt a lot." *Id.*  Petitioner reported this information to the doctor, but he "didn't care." *Id.*  Petitioner reports that he was not given his medical for his primary medical condition on one occasion recently, and the nurse informed him that there was a problem. *Id.* ¶ 20.  The following day, however, he received his medication without any problem. *Id.*  In April, Petitioner reports that he was very sick with diarrhea and other symptoms; he was given medicine but suffered from rectal bleeding due to using brown paper towels as toilet paper. *Id.* ¶ 21.  Petitioner also has a broken molar that causes him pain. *Id.* ¶ 22.  He states that he needs surgery for the broken molar, but the Facility denied the surgery; a doctor gave him Tylenol a few times and told him that if needed more Tylenol he would need to buy it from the commissary. *Id.* ¶¶ 22-23.  Petitioner also broke another tooth while in detention, and has trouble sleeping due to the pain from both broken teeth. *Id*. ¶ 25.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2241, a district court may exercise jurisdiction over a habeas petition when the petitioner is in custody and alleges that his custody violates the constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A petitioner may seek Section 2241 relief only in the district in which he is in custody. *United States v. Figueroa*, 349 F. App'x 727, 730 (3d Cir. 2009). This Court has jurisdiction over Petitioner's claims as he is detained within this district and alleges that his continued detention violates the Due Process Clause of the Fifth Amendment.

Here, the Petition seeks Petitioner's immediate release from detention, which the Court construes as a request for a preliminary injunction. *See Hope v. Warden York County Prison*, 2020 WL 1922372, at *2-4 (3d Cir. Apr. 21, 2020). Motions for temporary and preliminary injunctive relief are governed by a four-factor test. The movant must, as a threshold matter, establish the two "most critical" factors: likelihood of success on the merits and irreparable harm. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If these "gateway factors" are satisfied, the Court considers the third and fourth factors, which aim to balance the equities by examining the potential for harm to others if relief is granted and whether the public interest favors injunctive relief. *Id.* at 176, 179. The Court must then balance all four factors to determine, in its discretion, whether the circumstances warrant injunctive relief. *Id.* at 179.

The Court also considers whether Petitioner has established extraordinary circumstances justifying his release. *See Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986); *Landin v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (indicating that a court may only grant release pending a disposition of federal habeas claims when the petitioner has raised "substantial constitutional claims upon which he has a high probability of success, and . . . when extraordinary or exceptional

circumstances exist which make the grant of bail necessary to make the habeas remedy effective") (citation omitted)); *see also In re Soule's*, 688 F. App'x 134, 135-36 (3d Cir. 2017).

### III. DISCUSSION

The parties agree that Petitioner is detained under INA § 236(a), 8 U.S.C. § 1226(a).[17] Petitioner asserts that continuing to detain him at Bergen County Jail poses a serious threat to his health and safety because Petitioner has HIV, which raises his risk of serious complications if he were to contract COVID-19. Respondents do not dispute that Petitioner has HIV or that the CDC recognizes HIV as a condition that places people at higher risk of severe illness if they contract COVID-19. *See* Answer at 1, 6. Instead, the Government argues that the protocols in effect at Bergen County Jail are sufficient to protect medically vulnerable prisoners, including Petitioner, and maintain that his request for release should therefore be denied. *See* Answer at 16-19.

Courts in this district and in neighboring districts have, in the last several weeks, released ICE detainees who are similarly situated to Petitioner, including a decision from this Court releasing three medically vulnerable petitioners at Bergen County Jail. *See, e.g., Cristian A.R. v. Decker*, No. 20-3600, ECF No. 26 (D.N.J. April 12, 2020) (finding that the protocols in place at Bergen and Hudson County Jails did not adequately protect medically vulnerable detainees and holding that continued detention such detainees during COVID-19 pandemic amounted to punishment under the Fifth Amendment); *Rafael L.O. v. Tsoukaris*, No. 20-3481, ECF No. 25

---

[17] In the Answer, Respondents assert that Petitioner's continued detention without a bond hearing is lawful and that he has received all procedural protections offered by the INA and the Due Process Clause. Answer at 14. The Court disagrees. More than two months have passed since Petitioner was taken into custody and more than a month has passed since Petitioner's bond hearing was adjourned. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *See Jennings v. Rodriguez*, 138 S.Ct. 830, 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). That claim, however, is moot as Petitioner has been provided a bond hearing by an IJ, and the IJ denied bond finding that Petitioner did not establish that he was not a flight risk. *See* ECF No. 16-1, IJ Order dated May 1, 2020. For that reason, the Court dismissed this claim on May 11, 2020. See ECF No. 18.

11

(D.N.J. April 9, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Jeferson V. G. v. Decker*, No. 20-3644, 2020 WL 1873018 (D.N.J. Apr. 15, 2020); *Marvin A. G. v. Decker*, No. 20-1689 (D.N.J. Apr. 14, 2020); *Kevin M.A. v. Decker*, No. 20-4593, 2020 WL 2092791, at *10 (D.N.J. May 1, 2020).

Here, the Court finds that Petitioner Anthony O., like the Petitioners in *Cristian A.R.*, has a serious medical condition that renders him more vulnerable to severe illness if he were to contract COVID-19, and the existing protocols at Bergen County Jail, which are largely unchanged from those the Court considered in *Cristian A.R.*, are insufficient to protect Petitioner from contracting COVID-19 and therefore amount to punishment under the Fifth Amendment.

Given the heightened risk of COVID-19 exposure, the CDC Guidelines have made clear that correctional facilities must make "all possible accommodations" to prevent transmission of infection to high-risk individuals. CDC Interim Guidance at 16, 20. But despite the laudable, general protocols implemented generally at Bergen County Jail, Warden Ahrendt does not point to any specific protocols to protect medically-vulnerable people in the Facility's custody. Nor do Respondents contest the lack of available testing, and Warden Ahrendt's Declaration does not indicate that the Facility has sufficient testing supplies. Additionally, he confirms that they are not testing asymptomatic individuals, even though those individuals can transmit the virus. *See* Ahrendt Decl. ¶¶ 9.H. & 9.J. And, while he concedes to cohorting those who have had a known exposure to the virus, he does not indicate whether high-risk individuals like Petitioner would be ensured separation or adequate space from others in the cohorting environment. Thus, to the extent Respondents have taken measures to address the pandemic within Bergen County Jail, they have not ensured protection for the most vulnerable people within their care.

Like the Petitioners in *Cristian A.R.*, Petitioner here spends 23.5 hours a day in cramped cells that he must share with another person and the remaining thirty minutes out of his cell in common areas. It is during those thirty minutes that the detainees are at high risk for COVID-19 exposure and transmission. That brief period is the only time they have each day to take showers, make telephone calls to family members and attorneys, visit the commissary, and use recreation areas. Coming into close contact with frequently used items and shared spaces is unavoidable. As noted above, Warden Ahrendt's May 11, 2020 Declaration states that detainees have now been provided surgical masks to wear when outside their cells and clarifies that cleaning supplies have been made available to detainees to sanitize shared spaces and items; he further reports that there are no shortages in cleaning supplies at the Facility. *See* Ahrendt Decl. at ¶¶ 9.N; 9.L. These improvements to the protocol, while laudable, together with assurances about the availability of cleaning supplies do not change the Court's determination that the Facility does not sufficiently protect the most medically vulnerable detainees in their care.

In this regard, the Court notes that Petitioner reports the following: that he does not currently have soap or cleaning supplies in his cell; that soap is not always available in the showers, and detainees are unable clean their bodies; that detainees and staff do not always comply with the instruction to wear the masks; and that the inmates who bring his food "do not wear gloves or masks" *See* Camilo Decl. ¶¶ 7, 9, 12, 15.

Because Petitioner has a medical condition that puts him at risk of severe complications if he were to contract COVID-19, and because his conditions of confinement are not meaningfully distinguishable from the petitioners' circumstances in *Cristian A.R.*, the Court finds that Petitioner has shown a likelihood of success on the merits of his claim that his detention amounts to punishment.

He has likewise shown a likelihood of irreparable harm for the same reasons. To be entitled to a preliminary injunction, a movant must also establish that he or she is "more likely than not" to suffer irreparable harm absent the requested relief. *See Reilly*, 858 F.3d at 179. The Court rejects Respondents' argument Petitioner's likelihood of contracting COVID-19 is speculative. As the Supreme Court observed in *Helling*, "it would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." 509 U.S. at 33 (noting that "the Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event").

Because Petitioner has met the first two prongs of the preliminary injunction analysis. the Court next balances the equities and finds the potential of injury to Petitioner is high and that the public interest also supports the release of Petitioner before he contracts COVID-19 to preserve critical medical resources and prevent further stress on the states' and country's already overburdened healthcare systems. *See Rafael L.O.*, 2020 WL 1808843, at *9.

As this Court recognized in *Cristian A.R.*, Respondents have legitimate interests in ensuring that Petitioner does not flee and protecting the public, but those very important interests are adequately addressed by fashioning appropriate conditions of release. *See Cristian A.R.*, No. 20-3600, ECF No. 26 at 27. Petitioner has two convictions for Criminal Possession of a Controlled Substance (7th), N.Y.P.L. § 220.03, from 2016 and 2019, respectively, and an open bench warrant for Petit Larceny, N.Y.P.L. § 155.25, from 2011. *See* Answer, Ex. G, Form I-213 dated Feb. 12, 2020; Ex. H, Form I-213 dated Dec. 23, 2019; Ex. I, DHS Proffer of Evidence at 11. Petitioner's criminal history involves nonviolent offenses and he has informed the Court that, if released, he will reside with his fiancé. *See* ECF No. 14. The Court finds that Petitioner can be safely released on reasonable conditions of supervision and is also satisfied that there are reasonable conditions

14

that can ensure the Petitioners' appearance for future immigration proceedings. The specific conditions of release are set forth in the Order accompanying this Memorandum Opinion.

Finally, the Court also finds that Petitioner, who has HIV and is currently detained at Bergen County Jail, where he cannot maintain social distance or adequate hygiene, has established the extraordinary circumstances necessary to warrant the remedy of release on bail, and make bail necessary to make the habeas remedy effective. *See Cristian A.R.*, Civ. No. 20-3600, ECF No. 26 at 28 (citing *Landano*, 970 F.2d at 1239).

For these reasons, the Court will grant the Petition to the extent it seeks a preliminary injunction directing Petitioner's immediate release on reasonable conditions. An appropriate Order follows.

Dated: May 20th 2020                                         */s Madeline Cox Arleo*_____
                                                             **Hon. Madeline Cox Arleo**
                                                             **UNITED STATES DISTRICT JUDGE**